**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>F21 OpCo, LLC,[1]<br><br>Post-Effective Date Debtor. | Chapter 11<br><br>Case No. 25-10469 (MFW) |
| Steven Balasiano of MHR Advisory Group, LLC, as Plan Administrator for F21 OpCo, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>Hurricane Han Inc.,<br><br>Defendant. | Adv. No. **Refer to Summons** |

**COMPLAINT TO AVOID AND RECOVER TRANSFERS PURSUANT TO 11 U.S.C. §§ 547, 548, AND 550 AND TO DISALLOW CLAIMS PURSUANT TO 11 U.S.C. § 502**

Steven Balasiano of MHR Advisory Group, LLC, in his capacity as Plan Administrator (the "Plaintiff" or "Plan Administrator") for the above-captioned Post-Effective Date Debtor in the above-captioned case, files this complaint (the "Complaint") to avoid and recover transfers against Hurricane Han Inc. (the "Defendant") and to disallow any claims held by Defendant. In support of this Complaint, Plaintiff alleges the following upon information and belief:

## NATURE OF THE CASE

1. Plaintiff seeks to avoid and recover from Defendant, or from any other person or entity for whose benefit the transfers were made, all (a) preferential transfers of property that occurred during the ninety (90) day period prior to the commencement of the Debtors' bankruptcy

[1] The post-effective date debtor's (the "Post-Effective Date Debtor") service address is c/o MHR Advisory Group, LLC, 6701 Bay Parkway, 3rd Floor, Brooklyn, New York 11204, Attn: Steven Balasiano. On December 15, 2025, the Court entered a final decree closing the chapter 11 cases of Debtor F21 Puerto Rico, LLC, Case No. 25-10470, and Debtor F21 GiftCo Management, LLC, Case No. 25-10471 (the "Closed Debtors" and, collectively with the Post-Effective Date Debtor, the "Debtors").

proceedings pursuant to sections 547 and 550 of chapter 5 of title 11 of the United States Code (the "Bankruptcy Code") and, subject to proof (b) transfers that may have been fraudulent conveyances pursuant to sections 548 and 550 of the Bankruptcy Code.

2. In addition, Plaintiff seeks to disallow, pursuant to sections 502(d) and (j) of the Bankruptcy Code, any claim that Defendant has filed or asserted against the Debtors or the Post-Effective Date Debtor, or that has been scheduled for Defendant. Plaintiff does not waive but hereby reserves all of Plaintiff's rights and the rights of the Debtors or Post-Effective Date Debtor to object to any such claim for any reason, including, but not limited to, any reason set forth in sections 502(a) through (j) of the Bankruptcy Code.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the District of Delaware (the "Court") has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334(b). The underlying bankruptcy case is captioned *In re* F21 OpCo, LLC, Case No. 25-10469 (MFW).

4. This adversary proceeding is a "core" proceeding to be heard and determined by the Court pursuant to 28 U.S.C. § 157(b)(2) and the Court may enter final orders for matters contained herein.

5. Venue is proper in the District of Delaware pursuant to 28 U.S.C. §§1408 and 1409.

6. The statutory and legal predicates for the relief sought herein are sections 502, 547, 548, and 550 of the Bankruptcy Code and Rules 3007 and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

7. Pursuant to Local Bankruptcy Rule 7008-1, Plaintiff states that he consents to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent

of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## PROCEDURAL BACKGROUND

8. On March 16, 2025 (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code. On March 18, 2025, the Court entered an order directing the joint administration of the Debtors' chapter 11 cases for procedural purposes pursuant to Bankruptcy Rule 1015(b). [D.I. 70].

9. On June 24, 2025, the Court entered an order (the "Confirmation Order") [D.I. 493] confirming the *Debtors' Amended Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 493-1] (the "Plan"), together with all supplements and exhibits thereto, including the *Plan Administration Agreement* (the "Agreement") [D.I. 452, Ex. B].[2]

10. The effective date of the Plan (the "Effective Date") occurred on June 30, 2025. [D.I. 514].

11. Pursuant to paragraph 73 of the Confirmation Order and section IV.D.2 of the Plan, as of the Effective Date, Distribution Co. Assets,[3] including Retained Causes of Action under Chapter 5 of the Bankruptcy Code ("Avoidance Actions"), were vested in the Distribution Co.[4]

12. On December 15, 2025, the Debtors' cases were closed with the exception of the Reorganized Debtor's Chapter 11 Case (the "Closing Order"). [D.I. 660]. All pending and future matters related to the Chapter 11 Cases, including Causes of Action, shall be filed, administered, and heard in the Post-Effective Date Debtors' Chapter 11 Case. Notwithstanding the closed cases,

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Plan, Confirmation Order, and/or Agreement.

[3] All terms not defined herein shall have those definitions as ascribed to them in the Confirmation Order, Plan, or Agreement.

[4] The Distribution Co. Entities are the Debtors. *See* D.I. 452, Ex. E.

Plaintiff retains the right to investigate, commence, pursue, institute, file, prosecute, enforce, abandon and settle the Avoidance Actions subject to the terms of the Agreement. *Id.* As further provided under the Closing Order, no party shall be entitled to assert that the closing of the Closed Debtors' cases bars the pursuit of any Causes of Action pursuant to section 546(a)(2) of the Bankruptcy Code, so long as the Post-Effective Date Debtor's case remains pending. *Id.*

**THE PARTIES**

13. Pursuant to the Plan, Confirmation Order, and Agreement, Plaintiff was appointed the exclusive trustee of the Debtors' Estates and Distribution Co. and was, among other things, granted the authority to compromise, settle, and/or pursue Avoidance Actions, including this avoidance action.

14. Upon information and belief, Defendant was, at all relevant times, a vendor or creditor that provided goods and/or services to or for the Debtors. Upon further information and belief, at all relevant times, Defendant's principal place of business is located at 105 S. Mariposa Avenue, #405, Los Angeles, CA 90004. Plaintiff is informed and believes, and on that basis alleges, that Defendant is a corporation residing in and subject to the laws of the State of California.

**FACTUAL BACKGROUND**

15. As more fully discussed in the *Disclosure Statement for Debtors' Joint Plan Pursuant to Chapter 11 of the Bankruptcy Code* (the "Disclosure Statement") [D.I. 344], the Debtors sold trendy clothing and accessories to customers in the United States, primarily through brick-and-mortar stores. At its peak, the Debtors employed over 43,000 people, had over $4 billion in annual sales, and operated internally with franchise arrangements with foreign partners.

16. The Debtors' pre-petition corporate structure and business operations related back to the Debtors' predecessor's ("Old F21") 2019 prior chapter 11 case. Old F21 was able to

successfully consummate a going-concern sale during the 2019 bankruptcy. The Debtors' financial difficulties that led to the decision to file for chapter 11 bankruptcy protection are attributable to a combination of factors, all of which placed significant stress on the Debtors' liquidity position in the months leading up to the Petition Date. As described in the Disclosure Statement, the going-concern sale preserved thousands of jobs and vendor and landlord relationships, but unfortunately these efforts were made on the eve of the COVID-19 pandemic. Additional details of the Debtors' prepetition operations, debt structure, and factors that led to the Chapter 11 Case are set forth in Article II of the Disclosure Statement and are incorporated herein by reference.

17. As described in Article III.A of the Plan and Article I.C of the Disclosure Statement, General Unsecured Claims comprise an impaired class of creditors and are not expected to be paid in full.

18. As of the Petition Date, the Debtors utilized a cash management system (the "Cash Management System") for the collection, transfer, and disbursement of funds in the Debtors' business.[5] As of the Petition Date, the Cash Management System consisted of 123 bank accounts (collectively, the "Bank Accounts") at 4 different banks, including PNC Bank, N.A. ("PNC"), Bank of America, N.A., Banco Popular de Puerto Rico, and JPMorgan Chase Bank.

19. Among these Bank Accounts, disbursements to vendors were made from the accounts ending x5907, x5894, x5886, and x4087, all held at PNC by F21 Opco LLC (collectively, the "Disbursement Accounts").

---

[5] *See Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Cash Management System;(II) Authorizing Use of Prepetition Bank Accounts and Certain Payment Methods; (III) Authorizing Continued Performance of Intercompany Transactions in the Ordinary Course of Business; and (IV) Granting Related Relief* (the "Cash Management Motion"), incorporated herein by reference [D.I. 6].

20. The Debtors drew upon the Disbursement Accounts to pay for their operational costs, including payment to their vendors, suppliers, distributors, and other creditors, including the Defendant.

21. During the ninety (90) days before the Petition Date, that is between December 16, 2024 and March 16, 2025 (the "Preference Period"), the Debtors operated their business affairs and transferred their property, either by checks, cashier checks, wire transfers, ACH transfers, direct deposits, credit card payment, or otherwise, to various entities.

22. Upon information and belief, during the course of their relationship, the Defendant and one or more of the Debtors entered into agreements, which are evidenced by invoices, communications and other documents (collectively, the "Agreements"). The Agreements concerned and related to the goods and/or services provided by Defendant to the Debtors as described in the "Parties" section of this Complaint. The payments to Defendant in connection with the Agreements during the Preference Period are set forth on the Statement of Account, which is attached hereto and incorporated by reference as Exhibit A. Such details include "Invoice Number," "Invoice Date," and "Invoice Amount."

23. The Debtors made transfers of an interest in the Debtors' property to or for the benefit of Defendant during the Preference Period through payments aggregating to an amount not less than the amount set forth on Exhibit A hereto (the "Transfer" or "Transfers"). The details of each Transfer are set forth on Exhibit A and incorporated by reference. Such details include "Transfer Number," "Transfer Amount," "Clear Date," and "Debtor Transferor(s)."

24. Plaintiff is seeking to avoid all of the transfers of an interest of the Debtors' property made by the Debtors to Defendant within the Preference Period.

25. On or about January 26, 2026, Plaintiff, through counsel, sent one or more demand letters (collectively, the "Demand Letter") to Defendant, seeking a return of the Transfer(s). The Demand Letter indicated the potential statutory defenses available to the Defendant pursuant to section 547(c) of the Bankruptcy Code and requested that if Defendant has evidence to support any affirmative defenses, that it provide such evidence to Plaintiff for review.

26. Plaintiff, through his professionals, also performed his own due diligence evaluation of the reasonably knowable affirmative defenses available to Defendant. As part of Plaintiff's due diligence, Plaintiff reviewed the books and records in Plaintiff's possession and identified that Defendant potentially has $20,366.70 in invoices qualifying for the subsequent new value defense under section 547(c)(4) of the Bankruptcy Code. However, the subsequent new value defense is an affirmative defense for which Defendant bears the burden of proof under section 547(g). The potential new value is based on the invoice date in the books and records. As the dates for new value are often based on the shipping dates for goods and the actual dates of service for services, this new value is subject to adjustment. Additionally, section 547(c)(4)(B) provides that any potential new value must not be paid for by "an otherwise unavoidable transfer." To the extent that i) there are any prepayments in the Preference Period paying such new value that are not subject to avoidance by Plaintiff, or ii) Defendant successfully asserts affirmative defenses, including but not limited to the ordinary course of business defense or the contemporaneous exchange for new value defense, certain invoices may no longer be available for new value and the new value amount may be subject to reduction.

27. Additionally, Plaintiff reviewed the books and records in Plaintiff's possession to examine whether historical payment records exist that may be used to analyze whether, and to what extent, Defendant may be able to assert the subjective ordinary course of business affirmative

defense. However, the subjective ordinary course of business defense is an inherently factual endeavor, and payment history is only one factor. The presence of collection pressure, tightening of credit terms, a creditor's loss of credit insurance, and threats to stop shipments without payment, can make even statistically ordinary payments unordinary. Certain information related to these factors may only be in Defendant's possession, which Plaintiff is entitled to request during discovery. Accordingly, Plaintiff puts Defendant to its burden of proof to establish it is entitled to the ordinary course of business affirmative defense.

28. Based upon Plaintiff's review of the information, if any, provided by Defendant prior to filing this Complaint, and after performing Plaintiff's own due diligence evaluation of the reasonably knowable affirmative defenses to avoidance of the Transfer(s), Plaintiff has determined that Plaintiff may avoid some or all of the Transfers even after taking into account Defendant's alleged affirmative defenses.

29. During the course of this proceeding, Plaintiff may learn (through discovery or otherwise) of additional transfers made to Defendant during the Preference Period. It is Plaintiff's intention to avoid and recover all transfers made by the Debtors of an interest of the Debtors in property and to or for the benefit of Defendant or any other transferee. Plaintiff reserves the right to amend this original Complaint to include: (i) further information regarding the Transfer(s), (ii) additional transfers, (iii) modifications of and/or revision to Defendant's name, (iv) additional defendants, and/or (v) additional causes of action, if applicable (collectively, the "Amendments"), that may become known to Plaintiff at any time during this adversary proceeding, through formal discovery or otherwise, and for the Amendments to relate back to this original Complaint.

## CLAIMS FOR RELIEF

### COUNT I
### (Avoidance of Preference Period Transfers – 11 U.S.C. § 547)

30. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this First Claim for Relief.

31. As more particularly described on Exhibit A attached hereto and incorporated herein, during the Preference Period, the Debtor(s) identified on Exhibit A Transfers made to or for the benefit of Defendant in an aggregate amount not less than $123,366.70.

32. Each Transfer was made from the Disbursement Account(s) described *supra* and constituted a transfer of an interest in property of the Debtor(s) identified on Exhibit A.

33. Defendant was a creditor at the time of each Transfer by virtue of supplying the Debtor(s) identified on Exhibit A the goods and/or services identified in this Complaint and in the Agreements, as more fully set forth on Exhibit A hereto, for which the Debtor(s) identified on Exhibit A were obligated to pay following delivery in accordance with the Agreements.

34. Each Transfer was to or for the benefit of a creditor within the meaning of section 547(b)(1) of the Bankruptcy Code because each Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor(s) identified on Exhibit A to Defendant.

35. Each Transfer was made for, or on account of, an antecedent debt or debts owed by the Debtor(s) identified on Exhibit A to Defendant before such Transfers were made, as asserted by Defendant and memorialized in the Agreements, each of which constituted a "debt" or "claim" (as those terms are defined in the Bankruptcy Code) of Defendant prior to being paid by the transferring Debtor(s) as set forth on Exhibit A hereto.

36. Each Transfer was made while the Debtors were insolvent. Plaintiff is entitled to the presumption of insolvency for each Transfer made during the Preference Period pursuant to section 547(f) of the Bankruptcy Code.

37. Each Transfer was made during the Preference Period, as set forth on Exhibit A.

38. As a result of each Transfer, Defendant received more than Defendant would have received if: (i) the Debtors' cases were under chapter 7 of the Bankruptcy Code; (ii) the Transfers had not been made; and (iii) Defendant received payments of its debts under the provisions of the Bankruptcy Code. As evidenced by the Debtors' schedules filed in the underlying bankruptcy case as well as the proofs of claim that have been received to date, the Debtors' liabilities exceed their assets to the point that unsecured creditors will not receive a full payout of their claims from the Debtors' bankruptcy estates.

39. In accordance with the foregoing, each Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

**COUNT II**
**(Avoidance of Fraudulent Conveyances – 11 U.S.C. § 548(a)(1)(B))**

40. Plaintiff hereby incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Second Claim for Relief.

41. To the extent one or more of the Transfers identified on Exhibit A was not made on account of an antecedent debt, was a prepayment for goods and/or services subsequently received, or was incurred by one Debtor but paid for by another Debtor without a corresponding intercompany receivable recorded by the Debtor incurring the debt, Plaintiff pleads in the alternative that the Debtor(s) making such transfer(s) did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A. The Debtors were insolvent as of the date of the Transfer(s), or became insolvent as a result of the Transfer(s); or

B. The Debtors were engaged, or about to engage, in business or a transaction for which any property remaining with the Debtors was an unreasonably small capital; or

C. The Debtors intended to incur, or believed they would incur, debts beyond their ability to pay upon maturity.

42. Based upon the foregoing, the Potentially Fraudulent Transfers are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

**COUNT III**
**(Recovery of Avoided Transfers – 11 U.S.C. § 550)**

43. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Third Claim for Relief.

44. Plaintiff is entitled to avoid the Transfer(s) pursuant to section 547(b) of the Bankruptcy Code and any Potentially Fraudulent Transfers pursuant to section 548 of the Bankruptcy Code (collectively, the "Avoidable Transfers").

45. Defendant was the initial transferee of the Avoidable Transfer(s) or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Avoidable Transfer(s) were made.

46. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Avoidable Transfer(s), plus interest thereon to the date of payment and the costs of this action.

## COUNT IV
## (Disallowance of all Claims – 11 U.S.C. § 502(d) and (j))

47. Plaintiff incorporates all preceding paragraphs as if fully re-alleged herein, to the extent they are not inconsistent with allegations contained in this Fourth Claim for Relief.

48. Defendant is a transferee of transfers avoidable under sections 547 and/or 548 of the Bankruptcy Code, which property is recoverable under section 550 of the Bankruptcy Code.

49. Defendant has not paid the amount of the Avoidable Transfer(s), or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

50. Pursuant to section 502(d) of the Bankruptcy Code, any and all Claims of Defendant and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s), plus interest thereon and costs.

51. Pursuant to section 502(j) of the Bankruptcy Code, any and all Claims of Defendant, and/or its assignee, against the Debtors' chapter 11 estates or Plaintiff previously allowed by the Debtors or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the aggregate amount of the Avoidable Transfer(s).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant the following relief against Defendant:

A. On Plaintiff's First, Second, and Third Claims for Relief, judgment in favor of Plaintiff and against Defendant, avoiding all of the Avoidable Transfers and directing Defendant to return to Plaintiff the amount of the Avoidable Transfers, pursuant to sections 547(b), 548, and 550(a) of the Bankruptcy Code, plus interest from the date of demand at the maximum legal rate

and to the fullest extent allowed by applicable law, together with the costs and expenses of this action including, without limitation, attorneys' fees;

B. On Plaintiff's Fourth Claim for Relief, judgment in favor of Plaintiff and against Defendant disallowing any claims held or filed by Defendant against the Debtors until Defendant returns the Avoidable Transfers to Plaintiff pursuant to sections 502(d) and (j) of the Bankruptcy Code; and

C. Granting Plaintiff such other and further relief as this Court may deem just and proper.

Dated: Wilmington, Delaware
October 1, 2026

**BENESCH LAW**

/s/Jennifer R. Hoover
Jennifer R. Hoover (DE 5111)
Kevin M. Capuzzi (DE 5462)
Melissa A. Sobrepera (DE 7665)
1313 North Market Street
Suite 1201
Wilmington, DE 19801
Telephone: (302) 442-7006
Email: jhoover@beneschlaw.com

*and*

**ASK LLP**

By: /s/ Kara E. Casteel
Kara E. Casteel, Esq., MN SBN 0389115
Gary Underdahl, Esq., MN SBN 0301693
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
Telephone: (651) 289-3857
Fax: (651) 406-9676
Email: gunderdahl@askllp.com

*-and-*

Edward E. Neiger, Esq.
60 East 42nd Street, 46th Fl.
New York, NY 10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Counsel for Plaintiff*

Defendant: **Hurricane Han Inc.**
Bankruptcy Case: **F21 OpCo, LLC, et al.**
Preference Period: **Dec 16, 2024 - Mar 16, 2025**

## Transfers During Preference Period

| Debtor Transferor(s) | Debtor(s) Incurring Antecedent Debt | Transfer Number | Transfer Amount | Clear Date | Invoice Number | Invoice Date | Invoice Amount |
|---|---|---|---|---|---|---|---|
| F21 OpCo, LLC | F21 OpCo, LLC | ACH:3500014843 | $103,000.00 | 12/16/2024 | 2209 | 12/2/2024 | $3,000.00 |
| F21 OpCo, LLC | F21 OpCo, LLC | ACH:3500014843 | $103,000.00 | 12/16/2024 | 2208 | 12/2/2024 | $100,000.00 |
| F21 OpCo, LLC | F21 OpCo, LLC | ACH:3500000826 | $20,366.70 | 2/14/2025 | 2211 | 12/19/2024 | $325.00 |
| F21 OpCo, LLC | F21 OpCo, LLC | ACH:3500000826 | $20,366.70 | 2/14/2025 | 2210 | 12/19/2024 | $20,041.70 |

**Totals:** **2 transfer(s),** **$123,366.70**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>F21 OpCo, LLC,[1]<br><br>Post-Effective Date Debtor. | Chapter 11<br><br>Case No. 25-10469 (MFW) |
| Steven Balasiano of MHR Advisory Group, LLC, as Plan Administrator for F21 OpCo, LLC,<br>Plaintiff,<br>vs.<br><br>Hurricane Han Inc.,<br>Defendant. | Adv. No. **Refer to Summons** |

## NOTICE OF DISPUTE RESOLUTION ALTERNATIVES

As party to litigation you have a right to adjudication of your matter by a judge of this Court. Settlement of your case, however, can often produce a resolution more quickly than appearing before a judge. Additionally, settlement can also reduce the expense, inconvenience, and uncertainty of litigation.

There are dispute resolution structures, other than litigation, that can lead to resolving your case. Alternative Dispute Resolution (ADR) is offered through a program established by this Court. The use of these services are often productive and effective in settling disputes. The purpose of this Notice is to furnish general information about ADR.

The ADR structures used most often are mediation, early-neutral evaluation, mediation/arbitration and arbitration. In each, the process is presided over by an impartial third party, called the "neutral."

In mediation and early neutral evaluation, an experienced neutral has no power to impose a settlement on you. It fosters an environment where offers can be discussed and exchanged. In the process, together, you and your attorney will be involved in weighing settlement proposals and crafting a settlement. The Court in its Local Rules requires all ADR processes, except threat of a potential criminal action, to be confidential. You will not be prejudiced in the event a settlement is not achieved because the presiding judge will not be advised of the content of any of your settlement discussions.

Mediation/arbitration is a process where you submit to mediation and, if it is unsuccessful, agree that the mediator will act as an arbitrator. At that point, the process is the same as arbitration. You, through your counsel, will present evidence to a neutral, who issues a decision. If the matter in controversy arises in the main bankruptcy case or arises from a subsidiary issue in an adversary proceeding, the arbitration, though voluntary, may be binding. If a party requests *de novo* review of an arbitration award, the judge will rehear the case.

**Your attorney can provide you with additional information about ADR and advise you as to whether and when ADR might be helpful in your case.**

Dated: October 1, 2026

*<u>/s/ Stephen L. Grant, Sr.</u>*
*Clerk of Court*

[1] The post-effective date debtor's (the "Post-Effective Date Debtor") service address is c/o MHR Advisory Group, LLC, 6701 Bay Parkway, 3rd Floor, Brooklyn, New York 11204, Attn: Steven Balasiano. On December 15, 2025, the Court entered a final decree closing the chapter 11 cases of Debtor F21 Puerto Rico, LLC, Case No. 25-10470, and Debtor F21 GiftCo Management, LLC, Case No. 25-10471 (the "Closed Debtors" and, collectively with the Post-Effective Date Debtor, the "Debtors").